UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KENNETH MUTH                                                                                    PLAINTIFF

v.                                                                                CIVIL ACTION NO. 3:12-CV-377

INTEGRATED MANUFACTURING
AND ASSEMBLY, LLC and
SCOTT A. NORRIS                                                                                DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is presently before the court pursuant to two motions: (1) a motion by the plaintiff, Kenneth Muth, to remand the action to the Jefferson County, Kentucky, Circuit Court (DN 6), and (2) a motion by the defendants, Integrated Manufacturing and Assembly, LLC ("IMA") and Scott A. Norris, for partial summary judgment (DN 4). For the reasons stated herein, the court finds that the action must be remanded to the Jefferson Circuit Court.

### I.

Muth was employed as an Information Technology Manager for IMA. Norris was the Human Resources Manager at the company. In his complaint, Muth brought a claim against IMA for discrimination based on disability or perceived disability under KRS § 344.040, and claims against both IMA and Norris for intentional infliction of emotional distress ("IIED").

In Muth's complaint, he alleged that he suffered from "asthma, Meniere's disease, hypothyroidism, deviated septum, and work related stress as diagnosed by Melissa Hardin, ARNP." According to Muth, around June of 2010, he had to take time off work due to his conditions. He received short-term disability benefits for that time off. Then, in August of 2010,

he had a sinus surgery, after which he could not work for a period of time; he received short-term disability benefits through mid-September for time he could not work while he recovered from the surgery. According to Muth's complaint, ARNP Hardin suggested workplace restrictions for Muth for when he returned to his position at IMA. Norris told Muth that IMA could not accommodate the restrictions, but Norris and Muth supposedly came to an agreement for Muth to receive both short-term and long-term disability benefits.

However, Muth alleges, in December of 2010 he was informed that Prudential (which was apparently the disability benefits administrator for IMA) had made a determination that his short-term disability benefits were terminated retroactively as of September 20, 2010 and that his claim for long-term disability benefits was disallowed. In February of 2011, Muth underwent an independent medical examination by Dr. Dale Haller, Jr., who disagreed with ARNP Hardin's recommended workplace restrictions for Muth. According to Muth's complaint, IMA informed Muth that, based on Dr. Haller's examination, it would terminate his employment at the company unless ARNP Hardin changed the recommended restrictions. Muth then allegedly spoke to Dr. Haller about ways to monitor his condition to obtain medically verifiable information about the effects of Muth's workplace activities on his health. According to Muth, ARNP Hardin agreed to lift his workplace restrictions if IMA would provide such monitoring. However, on March 23, 2011, IMA terminated Muth's employment.

On October 31, 2011, Muth filed this action in Jefferson Circuit Court. A little over eight months later, on July 6, 2012, the defendants removed to this court based on its diversity jurisdiction. Four days after that, the defendants moved for partial summary judgment as to the

IIED claim against Norris. On August 3, 2012, Muth filed a motion to remand the action to the state court.

**II.**

Pursuant to 28 U.S.C. § 1441, a defendant may remove a case from a state court to a federal district court in any civil action in which the federal court would have original jurisdiction. As stated above, the defendants assert jurisdiction premised on diversity of citizenship, the requirements of which are that the suit is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Complete diversity of citizenship is required, i.e., the citizenship of each plaintiff in a case must be diverse from the citizenship of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Here, as the defendants acknowledge in their notice of removal, Muth and Norris are both citizens of Kentucky. Thus, complete diversity appears to be lacking.[1] However, the defendants argue that Norris' citizenship should be disregarded on the basis that he was fraudulently joined.

The "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). A removing defendant bears a heavy burden to prove fraudulent joinder. *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 953 (6th Cir. 2011) (quoting 16 JAMES W. MOORE ET AL. MOORE'S FEDERAL PRACTICE–CIVIL § 107.14(2)(c)(iv)(B) (3d ed. 1997)). To show a fraudulent joinder of a non-diverse defendant, the removing party must establish that there is no "colorable cause of action" against the non-diverse defendant. *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). In assessing whether a non-diverse defendant was fraudulently joined, a

---

[1] The notice of removal states that IMA is a citizen of Michigan, as it is a limited liability company with two members, each of whom are Michigan citizens.

- 3 -

district court must resolve any ambiguities in the controlling state law in favor of the non-removing party. *Coyne*, 183 F.3d at 493. "All doubts as to the propriety of removal are resolved in favor of remand." *Id.*

The court finds that the defendants have not met their heavy burden of proving fraudulent joinder. In support of their fraudulent joinder argument, the defendants rely on Muth's deposition testimony. In particular, the defendants assert that Muth's deposition testimony is insufficient to show that Norris engaged in "outrageous and intolerable" conduct that "offends against generally accepted standards of decency and morality." *See Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999). The defendants focus their argument on a portion of Muth's deposition testimony in which Muth was asked what particular actions Norris took that were outrageous and intended to cause Muth severe emotional distress. Muth responded that Norris had sent a letter to Dr. Haller, an independent medical expert, misrepresenting Muth's medical condition. When asked if there was any other of Norris's conduct that Muth was claiming was outrageous or offended accepted standards of decency, Muth stated there was nothing else. The defendants argue that the letter, by itself, is insufficient to meet the standard for outrageous conduct.

The defendants point to two cases that they suggest conclusively show that the conduct identified by Muth was not sufficiently outrageous: *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1 (Ky. 1990) and *Appel v. PACCAR, Inc.*, 2006 WL 2873434 (W.D.Ky. Oct. 4, 2006). In *Humana*, the Kentucky Supreme Court held that it was not outrageous for a nurse to tell a distressed patient who had given birth to a stillborn baby to "shut up" and that the baby would be "disposed of" at the hospital. 796 S.W.2d at 2-4. And in *Appel*, the court found that there was no

colorable claim in a case where it was alleged that the plaintiff's supervisor, *inter alia*: told a Human Resources representative that the plaintiff had complained about the representative and disliked the supervisor; accused the plaintiff of setting the supervisor up for failure; made derogatory statements about the plaintiffs' work; failed to tell the plaintiff certain information about new hires and raises that other employees received; told the plaintiff to choose between resignation and being placed on a performance improvement plan; informed the plaintiff that he would ensure that the plaintiff would not survive the performance improvement plan; and told the plaintiff that he would watch the plaintiff "go up in flames." 2006 WL 2873434, at *2-*3.

While it is true that those cases provide significant guideposts for a court to assess whether certain conduct is sufficiently outrageous, it is also clear that neither case is directly on point. Neither of the cases clearly addresses the alleged situation here: a supervisor intentionally misrepresenting an employee's medical condition to an independent medical examiner whose opinion will be used by the company to make a determination as to whether to continue to employ the employee. Even though in some cases such guideposts may be sufficient for a court to conclude that a particular claim is not colorable, this is not such a case. Keeping in mind that a district court assessing whether a claim is colorable must draw all unresolved issues of state law in favor of the plaintiff, the court finds that there is at least a reasonable basis for believing that Norris's alleged conduct in misrepresenting Muth's medical condition would be outrageous enough that Norris might be liable under Kentucky law. That is all that is required to overcome an argument of fraudulent joinder.[2]

---

[2] The court notes that its holding that Muth has asserted a colorable IIED claim against Norris is not a determination of whether Norris would be entitled to summary judgment on that claim. The court expresses no opinion as to the latter issue.

The court similarly rejects the defendants' argument that Norris's letter to Dr. Haller could not have caused Muth any emotional distress. The court finds that there is a reasonable basis for concluding that Muth might be able to establish the causal element of an IIED claim against Norris by showing that Norris's alleged misrepresentations to Dr. Haller ultimately led to Muth losing his job and suffering severe emotional distress.

Further, the procedural posture of this case also supports the conclusion that Muth's motion to remand should be granted. In *Smallwood v. Illinois Central Railroad Company*, 385 F.3d 568 (5th Cir. 2004), the Fifth Circuit explained the manner in which a district court should assess whether a plaintiff has a colorable cause of action against a non-diverse party:

> A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type of analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.
>
> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry, the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined.

385 F.3d at 573-574 (footnotes omitted).

In *Walker v. Phillip Morris USA, Inc.*, 443 F. App'x 946, 952-953 (6th Cir. 2011), the Sixth Circuit, approvingly quoting from the Fifth Circuit's opinion in *Smallwood*, held that the district court had improperly found that a plaintiff had fraudulently joined a non-diverse defendant. In that case, Philip Morris, a diverse defendant, was served with the plaintiffs' state court complaint on February 4, 2008. *Walker*, 443 F. App'x at 949. Philip Morris did not remove the case to federal court until two months later, after it had received affidavits from the non-diverse defendants. *Id.* The Sixth Circuit noted that it was undisputed that the complaint stated a colorable claim against the non-diverse defendants. *Id.* at 955. Indeed, the reason the defendants delayed in removing the case was because the complaint was sufficient to withstand a 12(b)(6) motion. *Id.* The Sixth Circuit held that it was improper for the district court to have relied upon the affidavits of the non-diverse defendants to find that the plaintiffs fraudulently joined the non-diverse defendants. *Id.* at 955-956. The Sixth Circuit stated that the district court's handling of the issue was problematic for two reasons:

> First, the district court's evaluation of the nature and sufficiency of the evidence supporting Plaintiffs' claims against the Kentucky Defendants went beyond the inquiry contemplated by the limited pleading-piercing exception recognized as appropriate where an undisputed factual inaccuracy or insufficiency in the plaintiff's claim against the in-state defendant is the basis of removal. . . . This piercing permits consideration of such undisputed facts that negate the claim. It is not intended to provide an opportunity to test the sufficiency of the factual support for a plaintiff's claim as is done in a Rule 56 motion.
>
> This leads to the second problem. In rejecting Plaintiffs' evidence as insufficient to overcome the Kentucky Defendants' affidavits, the court went beyond the relevant inquiry–whether Plaintiffs have a colorable claim under Kentucky law–and instead inquired whether Plaintiffs had adequate evidentiary support for their claim, the traditional Rule 56 inquiry. But Rule 56 motions for summary judgment are decided after discovery, not shortly after filing. Plaintiffs were made subject to a higher standard by Defendants' removal. Here the district court effectively decided that there were no genuine issues of material fact on a motion to remand, before discovery.

*Id.* at 956.

Here, the defendants did not remove the action to this court within thirty days of receiving the complaint. Instead, the defendants proceeded with significant amounts of discovery in state court. During that discovery, the parties exchanged and answered interrogatories and requests for production of documents and the defendants deposed Muth. That the defendants chose to proceed with discovery rather than removing to this court after receipt of the complaint suggests that the defendants believed that the complaint stated a colorable claim against Norris. *See* 28 U.S.C. § 1446(b) (stating that a defendant must remove within 30 days of receiving the complaint unless the case stated by the initial proceeding is not removable).

As the Sixth Circuit's opinion in *Walker* makes clear, when a court is assessing whether a party was fraudulently joined, it is not appropriate for the court to examine whether a plaintiff can put forth adequate evidentiary support for his claim. 443 F. App'x at 956. However, the defendants' argument for fraudulent joinder reads exactly as if it were asking the court to make a Rule 56 determination as to the ability of Muth to sustain his claim of IIED. For the court to do so would be contrary to the standards set forth in *Smallwood* and *Walker*.

To be sure, *Smallwood* and *Walker* both allow a district court, in its discretion, to permit some amount of discovery to uncover discrete facts that would show that a claim is not colorable. *See Smallwood*, 385 F.3d at 573; *Walker*, 443 F. App'x at 953-954. However, *Smallwood* makes clear that such piercing of the pleadings in a fraudulent joinder analysis should be a rare occurrence, that the piercing "should not entail substantial hearings," and that discovery should be "sharply tailored to the question at hand." 385 F.3d at 573-574. Going any further than such a summary inquiry behind the allegations of the pleadings would "carr[y] a

heavy risk of moving the court beyond jurisdiction and into a resolution of the merits." *Id.* at 574. "[T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* Here, it is clear that the parties engaged in much more than narrow discovery sharply tailored to any particular issue. The matter was pending in state court for eight months and, in addition to Muth undergoing a lengthy deposition, the parties exchanged and answered numerous interrogatories and requests for production. To now rely on the results of that significant discovery to determine whether Muth's claim against Norris for IIED is colorable would be to improperly reach beyond jurisdiction and make a determination of the merits. In short, whether Muth's claim against Norris for IIED has merit or not is not the proper question; to answer the jurisdictional issue confronting the court, it is enough to say that Muth brought a colorable claim against Norris at the outset of the litigation. Muth's motion to remand must therefore be granted.

Although the court finds that the defendants have not met the heavy burden of showing that Norris was fraudulently joined in this action, it will nonetheless deny Muth's request for costs and attorney's fees. Pursuant to 28 U.S.C. § 1447(c), a district court remanding a case for lack of subject matter jurisdiction has discretion to order the payment of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141. Given the high bar for an IIED claim as set forth in the cases cited by the defendants in support of their position that Muth could not show that Norris engaged in outrageous conduct, the court finds that the defendants had an objectively

reasonable basis for attempting to remove the action. The court will therefore not require that the defendants pay Muth's attorney's fees and costs.

For all the reasons stated above and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that: (1) the Plaintiff's motion to remand (DN 6) is **GRANTED**; (2) the Defendants' motion for partial summary judgment (DN 4) is **DENIED AS MOOT**; and (3) this action is **REMANDED** to the Jefferson County, Kentucky, Circuit Court.

February 27, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**